# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| SMITHCO MANUFACTURING INC., | |
| Plaintiff, | No. C09-4016-MWB |
| vs. | **ORDER** |
| HALDEX BRAKE PRODUCTS CORPORATION, | |
| Defendant. | |

On March 25, 2010, the plaintiff SmithCo Manufacturing, Inc. ("SmithCo") filed a motion for leave to amend its Complaint. Doc. No. 40. The defendant Haldex Brake Products Corporation ("Haldex") resisted the motion on April 1, 2010. Doc. No. 42. The motion came on for telephonic hearing on April 2, 2010. SmithCo filed a reply on April 5, 2010. Doc. No. 44. The matter now is fully submitted.

In an order entered earlier in this case, Judge Mark W. Bennett described the factual background of the case as follows:

> [P]laintiff SmithCo Manufacturing, Inc., (SmithCo) asserts claims arising from the substitution by defendant Haldex Brake Products Corporation (Haldex) of a different air control valve for the one Haldex had previously supplied, which SmithCo uses in the suspension system of the side-dump trailers that it manufactures. SmithCo alleges that[] when one of its employees contacted Haldex to explain the discrepancy in the appearance of the substituted valve and to question whether the right part had been shipped, a Haldex order clerk told SmithCo's employee that the substituted valve would perform the same as the old valve. SmithCo alleges, however, that the substituted valve caused damage to the suspension system of side-dump trailers sold to a number of SmithCo's customers.

Doc. No. 37, at 1. SmithCo filed suit in Iowa state court on February 25, 2009. In its petition, SmithCo alleged two causes of action, one based on several theories of negligence

(Count I), and the other on a claim of breach of implied warranty (Count II). *See* Doc. No. 4. Haldex removed the case to federal court.

On April 24, 2009, this court entered a scheduling order, Doc. No. 9, establishing a number of deadlines in the case, including a deadline of July 10, 2009, for the filing of motions to amend pleadings. Trial was scheduled for April 26, 2010. Doc. No. 10. On August 20, 2009, at the request of Haldex, the expert witness deadlines were extended. Doc. No. 15. On November 18, 2009, the court granted Haldex's unresisted motion to extend the discovery and dispositive motion deadlines, and the trial date was reset to July 12, 2010. Doc. No. 23. The deadline for filing motions to amend pleadings has never been extended.

On January 29, 2010, Haldex filed a motion for summary judgment, arguing that both of SmithCo's causes of action should be dismissed as a matter of law. Doc. No. 29. SmithCo resisted the motion. Doc. No. 34. In an order filed on March 11, 2010, Judge Bennett pointed out two issues relating to SmithCo's negligence claim that had not been raised in Haldex's motion for summary judgment, and ordered additional briefing on those issues. Doc. No. 37. He noted first that SmithCo's negligent misrepresentation claim would be available under Iowa law only if Haldex was in the profession or business of supplying information, and SmithCo had made no such allegation in its petition. *Id.*, at 2-3. Secondly, he noted that SmithCo's negligence claims might be precluded, entirely or in part, by the "economic loss doctrine" under Iowa law. *Id.*, at 3. On March 24, SmithCo dismissed its negligence claim with prejudice, Doc. Nos. 38 and 39, and on the next day, it filed the motion presently before the court.

In the proposed Amended Complaint, Doc. No. 40-2, SmithCo asserts three claims. In Count I, SmithCo again asserts a claim for breach of implied warranty; in Count II, SmithCo asserts a claim for breach of express warranty; and in Count III, SmithCo asserts a promissory estoppel claim. In support of its motion, SmithCo argues Federal Rule of

Civil Procedure 15(a) governs a party's right to amend its pleadings, and points out that under the Rule, leave to amend "shall be freely given when justice so requires."[1] Doc. No. 40-1, at 2. SmithCo also argues that Haldex will not be prejudiced by the amendment. *Id*.

Haldex responds by pointing out that the motion to amend was filed long after the deadline established by the court for filing motions to amend pleadings. Doc. No. 42, at 2. Therefore, Haldex argues, the stricter standard under Federal Rule of Civil Procedure 16(b), rather than the more lenient standard of Rule 15(a), applies to SmithCo's motion. Rule 16(b)(4) provides, "A schedule may be modified only for good cause and with the judge's consent." Haldex points out that in the motion to amend and the supporting brief, SmithCo has not even alleged good cause for the lateness of its motion to amend.

Judge Bennett addressed this issue in *Transamerica Life Insurance Co. v. Lincoln National Life Insurance Co.*, 590 F. Supp. 2d 1093 (N.D. Iowa 2008):

> [A]s the Eighth Circuit Court of Appeals has explained, "there is no absolute right to amend [pleadings]." *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007); *accord Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008); *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005). At a minimum, Transamerica's Motions To Amend Pleadings implicate the standards for leave to amend under both Rule 15(a) and Rule 16(b) of the Federal Rules of Civil Procedure. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). [footnote omitted] Under Rule 15(a), when leave to amend is not sought "as a matter of course[,]" . . . leave to amend pleadings should still be "freely given when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). Even under this

---

[1] The Rule was amended on December 1, 2009, and now reads as follows: "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The revised language does not constitute a substantive change in the rule.

3

standard, however, "[a] district court appropriately denies the movant leave to amend if 'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" *Sherman*, 532 F.3d at 715 (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005), with internal quotation marks omitted); *Baptist Health*, 477 F.3d at 544 (also observing that "a court may deny the motion based upon a finding of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility"). When leave to amend is sought only after the deadline for amendments in a Rule 16 scheduling order, however, the request for leave to amend also implicates Rule 16(b)'s "good cause" requirement. *Id*. (citing Fed. R. Civ. P. 16(b)(4)).

As the court in *Sherman* explained,

> The interplay between Rule 15(a) and Rule 16(b) is settled in this circuit. In *Popoalii* [*v. Correctional Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)], we stated that "[i]f a party files for leave to amend outside of the court's scheduling order, the party *must* show cause to modify the schedule." 512 F.3d at 497 (citing Rule 16(b) (emphasis added)). Moreover, we said so in the context of a discussion of the Rule 15 amendment standard, unmistakably concluding that Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a). *Id*. Because Popoalii filed her motion to amend her complaint five months after the scheduling deadline for amending pleadings, "[u]nder [Rule] 16(b), Popoalii needed to show cause in order to be given leave to amend." *Id*.

4

> The approach taken in *Popoalii* is derived directly from the plain language of Rule 16(b), which states both that district courts must issue a scheduling order limiting the time to amend the pleadings, and that a scheduling order "may be modified only for good cause." When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional. To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) "would render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998); *see also Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)."); *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005), *cert. denied*, 549 U.S. 811, 127 S. Ct. 48, 166 L. Ed. 2d 20 (2006) (applying the same approach); *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154-55 (1st Cir. 2004) (same); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (same); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (same).

*Sherman*, 532 F.3d at 716 (emphasis in the original). Thus, where, as here, the movant's motion to amend is filed well after the deadline for amendment of pleadings in a scheduling order, this court is required to apply the "good cause" standard of Rule 16(b). *Id*.

In *Sherman*, the Eighth Circuit Court of Appeals provided further clarification of the Rule 16(b) "good cause" standard:

> The good-cause inquiry required under Rule 16(b) is more narrow than the analysis undertaken by the district court. "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006); *see also* Fed. R. Civ. P. 16(b), advisory committee note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, we will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (concluding that there was "no need to explore beyond the first criterion, [diligence,] because the record clearly demonstrate[d] that Bradford made only minimal efforts to satisfy the [scheduling order's] requirements"). Our cases reviewing Rule 16(b) rulings focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order. *See*, e.g., *Rahn*, 464 F.3d at 822 (affirming the district court's denial of Rahn's request for a modification of the scheduling order because the record made clear that Rahn did not act diligently to meet the order's deadlines); *Barstad v. Murray County*, 420 F.3d 880, 883 (8th Cir. 2005) (affirming the district court's denial of leave to amend the Barstads' complaint under Rule 16(b) because the Barstads had eight months to request an amendment of the scheduling order and "knew

6

> of the claims they sought to add when they filed the original complaint"); *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (affirming, under Rule 16(b), the district court's denial of Freeman's motion to amend her complaint because she provided no reasons why the amendment could not have been made earlier or why her motion to amend was filed so late).
>
> *Sherman*, 532 F.3d at 716-17.
>
> Applying this standard, the court in *Sherman* held that the proffered amendment to assert a "preemption" defense should have been denied, because leave to amend to assert the defense was not sought until almost eighteen months after the deadline to amend pleadings had expired, and even though the defense was "purely legal," it was not asserted until two-and-one-half years after the suit was filed, a month after the close of discovery, a month after it was raised in a summary judgment motion, and eight months after the movant was aware of the applicability of the defense. *Id*. at 717-18. The court also rejected the movant's contentions that it had been diligent in asserting the belatedly proffered defense. *Id*. Similarly, in *MSK EyEs*, [*Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533 (8th Cir. 2008)], the Eighth Circuit Court of Appeals found that it was not an abuse of discretion to deny leave to amend pleadings when the motion was filed months after the Rule 16 deadline for amendment, years after the action was commenced, and after the moving party had notified the opposing party that it was moving for summary judgment. *See MSK EyEs*, 546 F.3d at 545-46.
>
> In short, "good cause" for a belated amendment under Rule 16(b) requires a showing that, despite the diligence of the movant, the belated amendment could not reasonably have been offered sooner. *Sherman*, 532 F.3d at 716-18.

*Transamerica Life Insurance Co.*, 590 F. Supp. 2d at 1097-1100.

In this case, SmithCo's motion to amend comes more than eight months after expiration of the deadline for motions to amend pleadings. Accordingly, the court must

7

determine whether SmithCo has established "good cause" for the delay. *See J. Lloyd International, Inc. v. The Testor Corp.*, slip op., 2010 WL 148610 at *3 (N.D. Iowa Jan. 13, 2010).

In the motion to amend its Complaint, SmithCo did not even attempt to assert good cause, but relied instead on Rule 15(a). When this was pointed out at the telephonic hearing on the motion, and SmithCo's counsel were asked whether they were alleging good cause, they explained that they were comfortable with the existing breach of implied warranty claim, but in the abundance of caution, they thought the claims of breach of express warranty and promissory estoppel should be added to the case. No real explanation was given for why the proposed additional causes have action had not been added to the case earlier.

In its reply brief, SmithCo attempts to remedy this shortcoming. SmithCo argues that the express warranty claim was "inherent within the broader breach of implied warranty of fitness for a particular purpose [claim]." Doc. No. 44, p. 4. SmithCo contends that it only became necessary to add an express warranty claim when Haldex made certain assertions in its Statement of Material Facts in Support of Motion for Summary Judgment, filed January 29, 2010.[2] *Id.* (citing Doc. No. 28-1). SmithCo contends, "The facts of record in the pending summary judgment proceedings show that plaintiff's employees were told by Defendant's employees prior to commencement of this litigation that the valve being supplied to Plaintiff from and after June 2005 was and is different from the Height control valve they initially purchased from Neway and upon

---

[2]SmithCo refers to Fact Number 13, in which Haldex avers, "Although Haldex represented that the Haldex EGP valve would perform the same as the Neway IR valve, this representation was not based on the specific exhaust rate characteristics required by SmithCo."

8

Haldex's acquisition of the Neway product line, from the Defendant Haldex, all prior to June 2005."[3]

If the court understands its argument, SmithCo is claiming that until Haldex filed its summary judgment papers, SmithCo had assumed there was no need to plead an express warranty claim because it was already a part of its implied warranty claim. SmithCo claims it became necessary to add an express warranty claim when Haldex asserted certain new facts in its summary judgment papers that were not previously disclosed in Haldex's pleadings. This argument is, at best, hard to follow. The court finds that SmithCo did not include express warranty and promissory estoppel claims in its original pleadings because it was satisfied with its implied warranty and negligence claims. Even after Haldex filed its summary judgment papers, which included its Statement of Material Facts, SmithCo did not become uneasy enough about its pleadings to seek an amendment until after Judge Bennett ordered additional briefing on the negligence claim, nearly two months later. Evidently, in rethinking its negligence claim, SmithCo realized there also could be some problems with the breach of implied warranty claim.

Good cause is not established when, after the deadline for filing motions to amend pleadings, a party simply rethinks its position and decides to plead its case differently. This is especially true where, as here, there have been no intervening factual discoveries or legal developments that have changed the nature of the case. It appears the proposed amendment would make purely legal changes in the pleadings that could have been asserted within the time allowed for amending the pleadings. The fact that Haldex made certain assertions in a statement of material facts filed in support of a motion for summary judgment papers does not change this analysis. No good cause has been shown to justify the late amendment.

---

[3]For this contention, Smithco cites Statement of Material Fact 7, which states, "In June of 2005, Haldex discontinued the Neway height control valve line and substituted its Haldex EGP height control valve." Doc. No. 44, p. 1.

Because good cause for allowing the proposed amendment has not been established, the court does not need to consider the possibility of prejudice to Haldex, or the lack thereof, from the proposed amended complaint. The court notes, however, that Haldex likely would not be prejudiced by the addition of the breach of express warranty claim, although it likely would be prejudiced by the addition of the promissory estoppel claim. This is because little, if any, additional discovery would be required to respond to the express warranty claim, while substantial additional discovery likely would be required to respond to the promissory estoppel claim. Because of this, absent the requirements of *Sherman*, the court likely would have allowed SmithCo to amend its pleadings to assert the express warranty claim. However, such a result is not permitted under the facts of this case and the applicable law.

For the reasons stated above, SmithCo's motion for leave to amend its Complaint, Doc. No. 40, is **denied**.

**IT IS SO ORDERED.**

**DATED** this 5th day of April, 2010.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT